## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

### GREENBELT DIVISION

| | |
|---|---|
| **SHERRIE MCDANIEL,** )<br>14085 County Road 29 )<br>Centre, AL  35960 )<br>     **Plaintiff,** )<br> )<br>**v.** )<br> )<br>**CAPITAL FINANCIAL ASSOCIATES,** )<br>**LLC,** )<br>107 Bates Ave. )<br>Gaithersburg, Montgomery County, MD 20877 )<br> )<br>**NATIONAL PROCESSING GROUP, LLC,** )<br>9928 Markham St. )<br>Silver Spring, Montgomery County, MD 20902 )<br> )<br>**LEON LUNG, a/k/a RICK LONG, a/k/a** )<br>**RICK LUNG,** )<br>26 Hidden Field Drive )<br>Gaithersburg, Montgomery County, MD 20877 )<br> )<br>**SHAWN BASILEY,** )<br>12517 Laurel Grove Place )<br>Germantown, Montgomery County, MD 20874 )<br> )<br>**KATHY SENGSOURICHANH, a/k/a** )<br>**KATHY SENGS** )<br>1400 Farm Crest Way Silver Spring, )<br>Montgomery County, MD 20905 )<br> )<br>**AND** )<br> )<br>**JOHN DOES 1-10,** )<br> )<br>     **Defendants.** )<br> ) | **Civil Action No.  14-cv-1979**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Sherrie McDaniel, by and through her undersigned counsel, for her Complaint against Defendants Capital Financial Associates, LLC; National Processing Group LLC; Leon Lung; Shawn Basiley; Kathy Sengsourichanh; and John Does 1-10 (together, "Defendants"), hereby alleges as follows:

### NATURE OF THE CASE

1.  Plaintiff is a resident of Cherokee County, Alabama, who fell victim to a loan modification scam perpetrated by Defendants in Maryland.

2.  Defendants are, both individually and through the Fraudulent Loan Modification Enterprise that they created together, members of an industry of fraudulent, or "scam," loan modification companies operating in Maryland and throughout the United States.  These scam loan modification companies prey upon desperate homeowners struggling to make their mortgage payments by falsely assuring them that they will obtain loan modifications for them. Instead of rescuing the homeowners from foreclosure, however, the scam companies defraud the homeowners and leave the homeowners at even greater risk of foreclosure than before they contacted the scam companies.

3.  Through a series of misrepresentations, Defendants led Ms. McDaniel to believe that they would be able to obtain a loan modification for her if she was able to show the investors in her loans that she could make the payments.  Believing that Defendants would ultimately transmit her payments to the holders of her loans, Ms. McDaniel transmitted more than a year's worth of mortgage payments to Defendants during 2011 and 2012.  By the time that Ms. McDaniel discovered that Defendants were retaining her mortgage payments rather than sending her payments to her lender or servicer, Defendants had defrauded Ms. McDaniel of

approximately $18,000 and placed her in a much more desperate financial position.  Although

Ms. McDaniel was not facing foreclosure when she was first contacted by Defendants, because

of Defendants' actions Ms. McDaniel lost her home to foreclosure in or around July 2012.

### THE PARTIES

### Plaintiff Sherrie McDaniel

4.   Plaintiff Sherrie McDaniel is an individual who lives at 14085 County Road 29,

Centre, AL 35960.

### Defendant Capital Financial Associates, LLC

5.   At all relevant times, Defendant Capital Financial Associates, LLC ("Capital

Financial") was a Maryland limited liability company.

6.   At all relevant times, Capital Financial has had a principal office located at 107 Bates

Avenue, Gaithersburg, MD 20877.

### Defendant National Processing Group LLC

7.   At all relevant times, Defendant National Processing Group LLC was a Maryland

limited liability company.

8.   National Processing Group LLC is an alter ego and/or successor company of

Defendant Capital Financial.

9.   Upon information and belief, at all relevant times, National Processing Group LLC

has had an office located at 107 Bates Avenue, Gaithersburg, MD 20877.

10.     National Processing Group LLC was registered as being located at 9928

Markham Street, Silver Spring, MD 20877.

### Defendant Leon Lung

11.     Defendant Leon Lung is an individual who, upon information and belief, lives at 26 Hidden Field Drive, Gaithersburg, MD 20877.

12.     Upon information and belief, at all relevant times, Defendant Lung has been a managing member, officer, or director, and/or alter ego of Defendant Capital Financial.

13.     Upon information and belief, Defendant Lung has used the aliases of "Rick Long" and "Rick Lung" when conducting business.

14.     Upon information and belief, Defendant Lung, either individually or in partnership with Defendant Shawn Basiley, directed the affairs of Defendant Capital Financial, and devised Defendants' scheme for defrauding homeowners.

### Defendant Shawn Basiley

15.     Defendant Shawn Basiley is an individual who, upon information and belief, lives at 12517 Laurel Grove Place, Germantown, MD 20874.

16.     Upon information and belief, at all relevant times, Defendant Basiley has been a managing member, officer, or director, and/or alter ego of Defendant National Processing Group LLC.

17.     Defendant Basiley represented to Ms. McDaniel that he was a loan counselor at Defendant Capital Financial.

### Defendant Kathy Sengsourichanh

18.     Defendant Kathy Sengsourichanh is an individual who, upon information and belief, lives at 1400 Farm Crest Way, Silver Spring, MD 20905.

19.     Upon information and belief, Defendant Sengsourichanh was a Senior Operation Manager of Defendant Capital Financial.  Defendant Sengsourichanh also continued to work for Defendant National Processing Group, LLC.

20.     Upon information and belief, at all relevant times, Defendant Sengsourichanh has used the alias of "Kathy Sengs" when conducting business.

### The Fraudulent Loan Modification Enterprise

21.     Together, Defendants conspired to form a Fraudulent Loan Modification Enterprise, whereby Defendants would use the mails and wires to obtain monies from consumers based upon knowing misrepresentations of material fact, with the intent that such consumers (including Ms. McDaniel) rely upon these factual misrepresentations, and with the intent that such consumers be injured and that Defendants, through the Fraudulent Loan Modification Enterprise, be enriched.

### JURISDICTION AND VENUE

22.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1965, as this case arises under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*.

23.     This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

24.     This Court has supplemental jurisdiction over Ms. McDaniel's state law claims pursuant to 28 U.S.C. § 1367(a).

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as at least one defendant resides within this District and Division.

## FACTUAL BACKGROUND

26.     In or around 2005, Ms. McDaniel purchased a home located at 115 County Road 202, Centre, AL 35960.

27.     Ms. McDaniel also purchased a home located at 1125 County Road 164, Centre, AL 35960 for her daughter and her daughter's family.

28.     At all relevant times, the servicer for the mortgages on both homes was American Home Mortgage Servicing, Inc. ("American Home").

29.     Beginning in 2009, Ms. McDaniel began having financial challenges that caused her to have difficulty paying the mortgage on her own home, and the first and second mortgages on her daughter's home.

30.     By the spring of 2011, Ms. McDaniel had fallen about three months behind on the mortgages for both homes.  She attempted to work out a payment plan with American Home, but the plan required her to double the payments to pay off the arrears.

31.     In or around May or June 2011, Ms. McDaniel was initially contacted by Defendant Capital Financial regarding potential loan modification services.

32.     Although Ms. McDaniel was not familiar with the loan modification process, she had heard about government programs helping homeowners in the news.

33.     In or around May or June 2011, Ms. McDaniel also had a telephone call with Defendant Basiley.

34.     During the telephone call, Defendant Basiley claimed that he, on behalf of Defendant Capital Financial, assisted homeowners in obtaining mortgage loan modifications.

35.     Defendant Basiley represented that it generally took three months to obtain a loan modification.

36.     Defendant Basiley also represented that the modification could lower her payments.

37.     Both during the call and through mailings and email communications, Defendant Basiley represented that Defendant Capital Financial, in partnership with attorneys, assists homeowners in avoiding foreclosure by negotiating with financial institutions to obtain loan modifications.

38.     In June 2011, Defendant Basiley represented to Ms. McDaniel via facsimile or United States Mail that she was "**pre-approved** for a Mortgage Loan Modification negotiation. . . . This loan modification pre-approval is based on the information that you have supplied to us. The final approval of this loan modification is contingent upon the negotiation with your mortgage lender.  To active [sic] the loan modification negotiation, you need to show proof of your loan modification payment."

39.     Defendant Basiley demanded that Ms. McDaniel begin paying $1,202.95 per month to Defendant Capital Financial, purportedly to assist Ms. McDaniel in obtaining loan modifications of the mortgages on both homes.  Defendant Basiley represented that the payments were necessary for Ms. McDaniel to obtain a modification because she needed to show the investors in her loans that she was able to make payments.  The payments requested by Defendant Basiley were similar to the original amounts Ms. McDaniel had paid American Home for her mortgages.

40.     Defendant Basiley represented that the investors would decide whether Ms. McDaniel could obtain a modification of her loans.  Through his representations, Defendant Basiley led Ms. McDaniel to believe that Defendant Capital Financial would collect her payments and provide them to the investors.  This misrepresentation led Ms. McDaniel to believe

that the payments would ultimately be transmitted to her lender or servicer to pay down her mortgages.

41.     Defendant Basiley did not inform Ms. McDaniel that any fee would be charged for his services, nor did he mention the amount of any fee.

42.     Desperate to save her home and her daughter's home, Ms. McDaniel agreed to the arrangement and signed various documents.

43.     After Ms. McDaniel signed the documents, Defendant Basiley instructed Ms. McDaniel that she should contact him, rather than her servicer, regarding her modification because he would manage her account and negotiate with the servicer.

44.     Among the documents that Defendant Basiley requested Ms. McDaniel sign was a form authorizing American Home to provide information about her mortgages to Defendants Basiley, Sengsourichanh, and Capital Financial.

45.     In or around August 2011, Defendants Basiley, Sengsourichanh, and Capital Financial became authorized to receive information about Ms. McDaniel's loans directly from American Home.

46.     From August 2011 through July 2012, Defendants Basiley and Sengsourichanh, on behalf of Defendant Capital Financial, demanded that Ms. McDaniel fill out various forms and submit documentation to Defendant Capital Financial.  This documentation was sent to Defendant Capital Financial, primarily via facsimile.

47.     From approximately June 2011 through August 2012, Ms. McDaniel paid Defendant Capital Financial $1,202.95 per month, totaling approximately $18,000, for purported assistance in obtaining a modification of her mortgages, believing that Defendant Capital

Financial was holding the funds to transmit to her lender or servicer once the modifications were obtained.

48.     Ms. McDaniel submitted the payments to Defendant Capital Financial via United States Mail.

49.     From August 2011 to July 2012, Defendants represented to Ms. McDaniel that Defendants were continuing to negotiate and obtain loan modifications for her.

50.     In or around February 2012, American Home contacted Ms. McDaniel to inform her of the pending foreclosure sale of her home.  In response, Ms. McDaniel contacted Defendant Basiley, who represented that he was still negotiating with American Home, and that the modification should be approved.  Ms. McDaniel then received a document indicating that the foreclosure sale had been postponed.  Ms. McDaniel also received additional requests for documents related to her modification from American Home.  She transmitted the documents requested to Defendant Capital Financial via facsimile.

51.     Ms. McDaniel received additional foreclosure notices in or around the spring of 2012.  Upon receipt of each notice, she called Defendant Basiley to ask why she had not obtained the loan modification that he had assured her was forthcoming.  Each time Ms. McDaniel called, Defendant Basiley told her that she must continue making payments to show the investors that she could pay the modified mortgages, in order to obtain the loan modifications.  Defendant Basiley also represented that he was continuing to work to obtain loan modifications on Ms. McDaniel's behalf.

52.     In or around the spring of 2012, Ms. McDaniel again contacted Defendant Capital Financial to inquire about the status of her account.  Ms. McDaniel spoke with another Capital Financial representative, who informed her that he was not in charge of her account, but

represented that, although it could take a longer period of time to obtain a modification on a secured loan, her modification should have gone through and he could not understand why it had not.  He then said that he would talk with Defendant Basiley.  Upon information and belief, this representative was Defendant Lung.

53.    In or around May 2012, American Home contacted Ms. McDaniel again to inform her of the pending foreclosure sale of her home.  In response, Ms. McDaniel contacted Defendant Basiley.  As he had done previously, Defendant Basiley represented that he was still negotiating with American Home, and that the modification should be approved.  Defendant Basiley represented that he thought it was definite that the foreclosure would be stopped and that Ms. McDaniel would be able to obtain a modification.  The foreclosure sale was postponed until July 2, 2012.

54.    In or around July of 2012, American Home placed Ms. McDaniel's home in foreclosure status.  Shortly thereafter, the home was sold in a foreclosure sale.

55.    The Friday before the foreclosure sale, Ms. McDaniel again contacted Defendant Basiley, who assured her that he was trying to prevent the foreclosure.  Nonetheless, the lender proceeded with the foreclosure sale.

56.    After her home was placed in foreclosure, Ms. McDaniel contacted Defendant Basiley to request a return of her approximately $18,000 in payments.  Defendant Basiley refused, and instead demanded additional payments from Ms. McDaniel.

57.    After losing approximately $18,000 to Defendants' Fraudulent Loan Modification Enterprise, and already facing substantial financial hardship after losing her own home to foreclosure, Ms. McDaniel was forced to expend even more time and money to avoid foreclosure

on her daughter's home.  The missed payments also resulted in interest and late fees accruing on

Ms. McDaniel's loans.

58.     Ms. McDaniel was ultimately able to obtain a modification on the first mortgage

for her daughter's home by negotiating directly with American Home.

## COUNT I – Violations of the Federal Racketeer Influenced and Corrupt Organizations ("RICO") Act
### (18 U.S.C. § 1961 *et seq.*)

59.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs

of this Complaint as if fully set forth herein.

60.     At all relevant times, Ms. McDaniel has constituted a person within the meaning

of 18 U.S.C. § 1961(3) and § 1964(c) because she has been capable of holding a legal or

beneficial interest in property.

61.     At all relevant times, Defendants have each constituted persons within the

meaning of 18 U.S.C. § 1961(3) and § 1962(c) because they have all been capable of

holding a legal or beneficial interest in property.

62.     Defendants are a group of persons associated together in fact for the common

purpose of carrying out an ongoing criminal enterprise, as described in the foregoing

paragraphs of this Complaint; namely, through a campaign of lies and fraud, to defraud Ms.

McDaniel – and, upon information and belief, other homeowners – by representing that they

were working to obtain mortgage modifications for Ms. McDaniel and setting aside significant

payments for Ms. McDaniel's servicer, while in reality, Defendants were taking the full

amount of money paid by Ms. McDaniel for themselves.   At all relevant times, the

Fraudulent Loan Modification Enterprise was separate and distinct from the individual

Defendants employed by or associated with the Fraudulent Loan Modification Enterprise.

Upon information and belief, the Fraudulent Loan Modification Enterprise has existed since at least 2009.

63.    At all relevant times, the Fraudulent Loan Modification Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).

64.    As described herein, Defendants engaged in a scheme or artifice to defraud Ms. McDaniel and the greater public by representing to Ms. McDaniel and other homeowners that Defendants would, in connection with purported loan modification services, accept a monthly payment from homeowners for the homeowners' mortgage loan servicer, but then instead would take all of the monthly payments for themselves.  In furtherance of their scheme, and as described herein, Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, and pictures, and also caused matters and things to be placed in any post office or authorized depository, including, but not limited to, the following:

    a.  e-mails, mailings, and facsimiles relating to the Fraudulent Loan Modification Enterprise; and

    b.  mailings from Ms. McDaniel of payments to support the Fraudulent Loan Modification Enterprise.

65.    Upon information and belief, Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to deceive and/or defraud Ms. McDaniel into paying Defendants.  Defendants' conduct constituted mail and/or wire fraud.

66.    Defendants' false and misleading statements were relied upon by Ms. McDaniel and have caused Ms. McDaniel substantial damages.

67.     The conduct of Defendants, as described herein, constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because, upon information and belief, Defendants, through interstate commerce, committed multiple related acts of mail and wire fraud. Specifically, on information and belief, they defrauded at least two other homeowners since 2009 through their scheme of charging monthly fees for purported loan modification services. Upon information and belief, Defendants represented to at least one of these additional homeowners that Defendants would direct the majority of the homeowner's mortgage payments to the homeowner's servicer, but then instead kept the full amount of all of the homeowner's payments. Upon information and belief, Defendants' conduct in defrauding homeowners by charging monthly fees for loan modification services has been a continuous pattern of racketeering activity.

68.     Ms. McDaniel suffered injury to her property by reason of Defendants' violations of 18 U.S.C. § 1962(c). Her injuries include the loss of her approximately $18,000 in payments to Defendants, the loss of her home in the subsequent foreclosure sale, costs expended to avoid foreclosure on her daughter's home, and damage to her credit rating.

69.     These injuries were a direct, proximate, and reasonably foreseeable result of Defendants' violation of 18 U.S.C. § 1962(c).

70.     Pursuant to 18 U.S.C. § 1964(c), Ms. McDaniel is entitled to recover treble damages plus costs and attorneys' fees from Defendants.

## COUNT II – Conspiracy to Violate RICO
### (18 U.S.C. § 1962(d))

71.     The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

72.     Upon information and belief, Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c), as described in Count One, *supra*, in violation of 18 U.S.C. § 1962(d).

73.     Upon information and belief, Defendants knew that they were engaged in a conspiracy to commit the predicate acts and knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity.  This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

74.     Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Fraudulent Loan Modification Enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

75.     Upon information and belief, each Defendant knew about and agreed to facilitate the Fraudulent Loan Modification Enterprise's scheme to defraud Ms. McDaniel of the monies that she paid to Defendants.  It was part of the conspiracy that Defendants and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Fraudulent Loan Modification Enterprise, including the acts of racketeering set forth herein.

76.     As a direct and proximate result of Defendants' conspiracy, the acts of racketeering activity of the Fraudulent Loan Modification Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Ms. McDaniel has been injured.  Her injuries include the loss of her approximately $18,000 in payments, the loss of her home, and damage to her credit rating.

77.     Pursuant to 18 U.S.C. § 1964(c), Ms. McDaniel is entitled to recover treble damages plus costs and attorneys' fees from Defendants.

**COUNT III - Violations of the Maryland Credit Service Businesses Act ("MCSBA")**
(Md. Code Ann., Com. Law § 14-1901 *et seq.*)

78.     The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

79.     The MCSBA regulates credit service businesses operating in the State of Maryland.

80.     The MCSBA defines a "[c]redit services business" as "any person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such person can or will sell, provide, or perform . . . [specified] services in return for the payment of money or other valuable consideration," including "[o]btaining an extension of credit for a consumer." Md. Code Ann., Com. Law § 14-1901(e)(1)(ii).

81.     An extension of credit "means the right to defer payment of debt or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes." Md. Code Ann., Com. Law § 14-1901(f).

82.     Defendants were a credit services business because loan modifications constitute an extension of credit under the MCSBA.

83.     It is unlawful for a credit services business to "[c]harge or receive any money or other valuable consideration prior to full and complete performance of the services that the credit services business has agreed to perform for or on behalf of the consumer." Md. Code Ann., Com. Law § 14-1902(6).

84.     Defendants violated § 14-1902(6) by charging Ms. McDaniel upfront payments before completing the services that they claimed they would perform.

85.     It is unlawful for a credit services business to "[m]ake or use any false or misleading representations in the offer or sale of the services of a credit services business." Md. Code Ann., Com. Law § 14-1902(4).

86.     Defendants misrepresented that Ms. McDaniel's payments were required to show investors that she could pay her mortgages, when in fact such payments to Defendants were not a requirement to obtain a loan modification from Ms. McDaniel's servicer. Defendants characterized Ms. McDaniel's payments to Defendants as "loan modification payment[s]," and misrepresented to Ms. McDaniel that her monthly payments would be applied to her loans, but, upon information and belief, Defendants instead retained the full amount of all of Ms. McDaniel's payments for themselves.

87.     It is unlawful for a credit services business to "[e]ngage, directly or indirectly, in any act, practice, or course of business which operates as a fraud or deception on any person  in connection with the offer or sale of the services of a credit services business." Md. Code Ann., Com. Law § 14-1902(5).

88.     Defendants violated § 14-1902(5) by deceiving Ms. McDaniel into believing that Defendants were setting aside her payments for Ms. McDaniel's lender or servicer, when Defendants were instead, upon information and belief, retaining the full amount of all of Ms. McDaniel's payments.

89.     It is unlawful for a credit services business to "[r]eceive any money or other valuable consideration from the consumer, unless the credit services business has secured from the Commissioner a license under Title 11, Subtitle 3 of the Financial Institutions Article."

Md. Code Ann., Com. Law § 14-1902(1); *see also* § 14-1903(b) ("A credit services business is required to be licensed under this subtitle and is subject to the licensing, investigatory, enforcement, and penalty provisions of this subtitle and Title 11, Subtitle 3 of the Financial Institutions Article.").

90.     Defendants violated § 14-1902(1) by receiving money from Ms. McDaniel despite, upon information and belief, failing to obtain a credit services business license.

91.     The MCSBA requires any credit services business to "provide the consumer with a written information statement containing all of the information required under § 14-1905 of this subtitle." Md. Code Ann., Com. Law § 14-1904(a).

92.     Defendants violated § 14-1904(a) because, upon information and belief, they never provided a written information statement containing the required information to Ms. McDaniel.

93.     As a result of Defendants' conduct, Ms. McDaniel suffered injury, including the loss of her approximately $18,000 in payments and damage to her credit rating.

94.     Upon information and belief, Defendants' violations of the MCSBA were willful, entitling Ms. McDaniel to recover punitive damages.

### COUNT IV - Violations of the Maryland Consumer Protection Act ("MCPA")
(Md. Code Ann., Com. Law § 13-101 *et seq.*)

95.     The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

96.     The MCPA prohibits, in relevant part, any "person . . . [from] engag[ing] in any unfair or deceptive trade practice . . . in . . . [t]he sale . . . of any . . . consumer services; [or] . . .

[t]he offer for sale . . . of . . . consumer services." Md. Code Ann., Com. Law § 13-303(1)-(2).

97.     Pursuant to Md. Code Ann., Com. Law § 14-1914(a), a violation of the MCSBA in the sale of the services of a credit services business constitutes an unfair or deceptive trade practice, in violation of the MCPA.

98.     Defendants committed an unfair or deceptive trade practice under the MCPA because they violated the MCSBA in the sale of the services of a credit services business, as set forth in Count III *supra*. Defendants' MCSBA violations were in the offer and/or sale of a consumer service under § 13-303(1)-(2).

99.     "Unfair or deceptive trade practices" also include, in relevant part, any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," § 13-301(1); "[f]ailure to state a material fact if the failure deceives or tends to deceive," § 13-301(3); and "[d]eception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any consumer goods, consumer realty, or consumer service,"§ 13-301(9)(i).

100.     Defendants engaged in unfair or deceptive trade practices in the offer and/or sale of consumer services under § 13-303(1)-(2) by falsely representing to Ms. McDaniel that her payments were required to show the investors in her loans that she could pay, when in fact such payments to Defendants were not a requirement to obtain a loan modification from

Ms. McDaniel's' servicer.  Defendants characterized Ms. McDaniel's payments to Defendants as "loan modification payment[s]," and misrepresented to Ms. McDaniel that her monthly payments would be applied to her loans, but, upon information and belief, Defendants instead retained the full amount of all of Ms. McDaniel's payments for themselves.

101.    Additionally, a trade practice is "unfair" if it causes an injury to consumers that is substantial, that is not outweighed by any countervailing benefits to consumers or competition that the practice produces, and that is an injury that consumers themselves could not reasonably have avoided.  The Court may look to statutes or other sources of public policy to affirm that a practice is unfair.

102.    Defendants engaged in an unfair trade practice in the offer and/or sale of consumer services under § 13-303(1)-(2) by demanding that Ms. McDaniel pay them approximately $18,000 over a period of approximately 15 months instead of making her mortgage payments.

103.    This practice caused substantial injury to Ms. McDaniel, including the loss of her payments of approximately $18,000, the loss of her home, and damage to her credit rating.

104.    The substantial injury to Ms. McDaniel is not outweighed by any countervailing benefits to consumers or to competition.

105.    Ms. McDaniel could not reasonably avoid the substantial injury, due to Defendants' false representations that her payments were required to show the investors in her loans that she could repay her loans, and that her monthly payments would be applied to her loans.   These misrepresentations led Ms. McDaniel to believe that the payments would go to her lender or servicer.

106.    At the time that Defendants requested and received the funds from Ms. McDaniel, she had not executed any written agreement with her lender or servicer that incorporated an offer of mortgage assistance relief that Defendants had obtained from the lender or servicer.  This was contrary to public policy, including the Federal Trade Commission's Mortgage Assistance Relief Services Rule, 12 C.F.R. § 322.5(a) (2011), recodified as the Consumer Financial Protection Bureau's Regulation O, 12 C.F.R. § 1015.5(a) (2011).

107.    As a result of Defendants' conduct, Ms. McDaniel suffered injury, including the loss of her approximately $18,000 in payments, loss of her home, and damage to her credit rating.

## COUNT V - Fraud/Fraud in the Inducement

108.    The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

109.    Defendants misrepresented that Ms. McDaniel's payments were required to show investors that she could pay her mortgages, when in fact such payments to Defendants were not a requirement to obtain a loan modification from Ms. McDaniel's servicer. Defendants characterized Ms. McDaniel's payments to Defendants as "loan modification payment[s]," and misrepresented to Ms. McDaniel that her monthly payments would be applied to her loans, but, upon information and belief, Defendants instead retained the full amount of all of Ms. McDaniel's payments for themselves.  Upon information and belief, Defendants made their misrepresentations with the intent to defraud Ms. McDaniel of her payments.

110.    Upon information and belief, Defendants have defrauded other homeowners across the country, including in Maryland, in a similar manner.

111.     Ms. McDaniel relied upon Defendants' misrepresentations in paying approximately $18,000 to Defendants.

112.     Ms. McDaniel was entitled to rely on Defendants' misrepresentations because Defendants held themselves out as financial experts acting as her agents, and on her behalf, and Ms. McDaniel had no reason to believe that Defendants' representations were false.

113.     As a result of Defendants' conduct, Ms. McDaniel suffered injury, including the loss of her approximately $18,000 in payments, loss of her home, and damage to her credit rating.

114.     Upon information and belief, Defendants acted with actual malice because they intentionally defrauded Ms. McDaniel and displayed wanton or reckless disregard for her rights. Defendants' conduct was particularly outrageous because Ms. McDaniel paid for Defendants' services at a time when she was desperately seeking to save both her own home and her daughter's home.  Accordingly, Ms. McDaniel is entitled to punitive damages.

## COUNT VI - Fraudulent Concealment

115.     The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

116.     When Defendants agreed to negotiate for loan modifications on Ms. McDaniel's behalf, they became Ms. McDaniel's agents. An agent has a duty to act with the care, competence, and diligence normally exercised by agents in similar circumstances.

117.     After Defendants led Ms. McDaniel to believe that they were setting aside her payments for her mortgage lender or servicer, Defendants failed to disclose that, upon information and belief, they had not sent any of Ms. McDaniel's payments to her lender or

servicer.  Defendants concealed their fraud by repeated assurances to Ms. McDaniel that they were continuing to work to obtain her loan modifications, and that the loan modifications were forthcoming.

118.    Upon information and belief, Defendants intended, through their fraudulent concealments, to defraud Ms. McDaniel of her payments.

119.    Defendants intended for Ms. McDaniel to rely upon and to act upon their misrepresentations.  Specifically, upon information and belief, Defendants intended for Ms. McDaniel to believe that Defendants were setting aside her mortgage payments for her lender or servicer so that she would continue to pay Defendants and would refrain from seeking a refund, calling her servicer directly, or seeking foreclosure-related help elsewhere.

120.    Ms. McDaniel relied on Defendants' fraudulent concealments in paying Defendants' fees.

121.    Ms. McDaniel was entitled to rely on Defendants' misrepresentations because Defendants held themselves out as financial experts who would negotiate on her behalf, and Ms. McDaniel had no reason to believe that Defendants' representations were false.

122.    As a result of Defendants' conduct, Ms. McDaniel suffered injury, including the loss of her approximately $18,000 in payments, loss of her home, and damage to her credit rating.

123.    Upon information and belief, Defendants acted with actual malice because they intentionally defrauded Ms. McDaniel and displayed wanton or reckless disregard for her rights.  Defendants' conduct was particularly outrageous because Ms. McDaniel paid for

Defendants' services at a time when she was desperately seeking to save both her own home, and her daughter's home. Accordingly, Ms. McDaniel is entitled to punitive damages.

## COUNT VII - Negligent Misrepresentation

124.    The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

125.    When Defendants agreed to negotiate for a loan modification on Ms. McDaniel's behalf, they became her agents. An agent has a duty to act with the care, competence, and diligence normally exercised by agents in similar circumstances.

126.    Defendants misrepresented that Ms. McDaniel's payments were required to show investors that she could pay her mortgages, when in fact such payments to Defendants were not a requirement to obtain a loan modification from Ms. McDaniel's servicer. Defendants characterized Ms. McDaniel's payments to Defendants as "loan modification payment[s]," and misrepresented to Ms. McDaniel that her monthly payments would be applied to her loans, but, upon information and belief, Defendants instead retained the full amount of all of Ms. McDaniel's payments for themselves.

127.    Defendants' misrepresentations, if not fraudulent, were at least negligent.

128.    Defendants intended for Ms. McDaniel to rely upon and to act upon their misrepresentations. Specifically, upon information and belief, Defendants intended for Ms. McDaniel to believe that Defendants were setting aside her mortgage payments for her lender or servicer so that she would continue to pay Defendants and would refrain from seeking a refund, calling her servicer directly, or seeking foreclosure-related help elsewhere.

129.    Upon information and belief, Defendants knew that Ms. McDaniel was desperate to save her home and her daughter's home and would rely on Defendants' misrepresentations.

130.    Upon information and belief, Defendants knew that Ms. McDaniel's reliance would result in loss or injury, including, but not limited to, loss of her payments.

131.    Ms. McDaniel justifiably relied on Defendants' misrepresentations in paying their fees.

132.    Ms. McDaniel was entitled to rely on Defendants' misrepresentations because Defendants held themselves out as financial experts and Ms. McDaniel had no reason to believe that Defendants' representations were false.

133.    As a result of Defendants' conduct, Ms. McDaniel suffered injury, including the loss of her approximately $18,000 in payments, loss of her home, and damage to her credit rating.

## COUNT VIII - Civil Conspiracy

134.    The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

135.     Upon information and belief, Defendants had an unlawful agreement to defraud Ms. McDaniel, as set forth in Counts One and Two, *supra.*

136.    Defendants committed overt acts in furtherance of the agreement by representing to Ms. McDaniel that her payments would be directed to her lender or servicer and accepting her payments, but then retaining the full amount of all of the payments.

137.     As a result of Defendants' conduct, Ms. McDaniel suffered injury, including the loss of her approximately $18,000 in payments, loss of her home, and damage to her credit rating.

## COUNT IX - Breach of Contract

138.      The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

139.     Defendants agreed to assist Ms. McDaniel in obtaining a loan modification, in part by agreeing to set aside Ms. McDaniel's payments for her lender or servicer to pay her mortgages.

140.     Defendants breached their contract with Ms. McDaniel by failing to send any of Ms. McDaniel's payments to her lender or servicer.

141.     Upon information and belief, Defendants breached their contract in bad faith, thereby violating the implied duty of good faith and fair dealing.

142.     As a result of Defendants' conduct, Ms. McDaniel suffered injury, including the loss of her approximately $18,000 in payments, loss of her home, and damage to her credit rating.

## COUNT X - Unjust Enrichment

143.      The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

144.     Even if Defendants did not have an express contract with Ms. McDaniel, Ms. McDaniel conferred a benefit on Defendants by paying them approximately $18,000.

145.     Defendants knew of the approximately $18,000.

146.    Defendants accepted and retained the approximately $18,000.

147.    Defendants' retention of the approximately $18,000 is inequitable in light of Defendants' failure to set aside Ms. McDaniel's payments for her lender or servicer after representing that they would do so.   Accordingly, Ms. McDaniel is entitled to the return of her approximately $18,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to grant judgment against Defendants jointly and severally, and/or vicariously, for damages in an amount exceeding $75,000, including:

a. Actual damages in an amount to be determined by a jury, including, but not limited to, reimbursement of her approximately $18,000 in payments to Defendants;

b. Treble damages;

c. Punitive damages;

d. Costs of this action;

e. Reasonable attorneys' fees; and

f. Such other and further relief as the Court deems may be just and proper.

Dated: June 18, 2014                    Respectfully submitted,

                                        By:  _____

                                             Soyong Cho (Bar No. 17132)
                                             Catherine LaRose*
                                             Christopher Shelton**
                                             K&L Gates LLP
                                             1601 K Street, N.W.
                                             Washington, D.C.  20006
                                             Telephone: (202) 778-9000
                                             Facsimile:  (202) 778-9100

                                             Megan K. Whyte de Vasquez (Bar No. 18255)
                                             Washington Lawyers' Committee for Civil
                                             Rights and Urban Affairs
                                             11 Dupont Circle, N.W.
                                             Suite 400
                                             Washington, D.C.  20036
                                             Email: megan_whyte@washlaw.org
                                             Telephone: (202) 319-1000
                                             Facsimile:  (202) 319-1010

                                             **ATTORNEYS FOR PLAINTIFF**

                                             *Motion for admission *pro hac vice* to be filed
                                             **Admitted in MD, motion for admission
                                             pending

### DEMAND FOR JURY TRIAL

Plaintiff Sherrie McDaniel, through counsel, hereby demands a trial by jury on all issues

which may be tried by a jury.

_____              Dated:  June 18, 2014
Soyong Cho
Counsel for Plaintiff Sherrie McDaniel